Cuma, per
Nott, J.
The testatrix in this case gave the complainant S. E. .M’Cants, then S. E. Campbell, a legacy of £150, without interest, until it was convenient to her executors to put it out at interest, or to purchase public stock therewith, and to pay it over to her when she should arrive at the age of eighteen years, with the accumulated interest. After giving certain other legacies she gave all the residue of her estate, consisting of lands and negroes, to her executors, in trust for certain specified purposes until her grand son, J. F. Bee the defendant, should arrive at the age of twenty-one years, *388 and then she gave the whole to him during life, &c. and upon the happening of certain contingencies, over to the complainant S. E. Campbell. The legacy to the complainant was never paid by the executor. Neither was it put out at interest, or vested in stock, or otherwise employed for her benefit. But the whole of the estate was delivered over to the defendant J. F. Bee, on his arrival at the age of twenty-one years. When the complainant arrived at twenty-one years she applied for her legacy, which was not paid. For four years she said, she was making incessant, but unsuccessful, applications for it; she was poor and necessitous, and much in want of money. These facts must be taken as true, because they are brought out by the defendant who has examined her by interrogatories, and has thereby made her his own witness; yet neither her solicitations nor her necessity could prevail. She could procure during that period only twenty dollars, although the estate appeared to have been ample. Wearied out with knocking at defendant’s door and exposing her wants, she at length proposed to accept this negro woman, whom she supposed she could hire out for a support, as -she was much in want of money, and had not even the means of subsistence. She was led to believe that her legacy did not carry interest, and therefore agreed to accept this slave in full satisfaction of her claim. She afterwards discovered that she had been imposed upon, and applied to the defendant to do her justice by allowing her something more. A hundred dollars was promised, but has never been paid. She has since married, and her husband has endeavoured to obtain that justice which she was unable to procure. But his efforts have been equally unsuccessful. After several fruitless attempts, he has been driven by necessity to seek that relief in the Court of Equity which he despaired of obtaining by any other means. The Chancellor being of opinion that they were *389 not entitled to relief dismissed the bill. And this is a motion to reverse that decree. By the terms of the will, as also by the nature of the trust created by it, the legacy due to the complainants ought to have been paid before the property was delivered up to the residuary legatee. The legatee therefore, received the estate coupled with the trust, and therefore took upon himself in relation to complainant the character of a trustee. The rule that a trustee cannot purchase for himself, nor deal with the cestui que trust with regard to the trust estate, is very well settled by the decisions of the English Courts; see 1 Madd. Cha. 111, 112, and the cases there cited, and particularly the case Ex parte Bennett, 10 Ves. 385 : and the principle has been repeatedly recognized by our Courts. There are indeed cases where purchases made by a trustee of his cestui que trust have been supported; but these are where, after a scrupulous examination of all the circumstances, the Court is satisfied that there is no fraud, no concealment, no advantage taken by the trustee of the information acquired by him in the character of trustee. 1 Madd. Cha. 113. Coles v. Trecothick, 9 Ves. 247. Morse v. Royal, 12 Ves. 372, 373. The case now under consideration is one of a sale by the trustee to the cestui que trust, and not of a purchase; but the same principle must apply. 1 Madd. Cha. 115. Gibson v. Jeyes, 6 Ves. 266.
A legatee, taking an estate coupled with a trust, takes subject to the trust.
A trustee cannot purchase or deal with his ces-tui que trust in relation to the trust estate.
Exception, where there is no fraud, concealment or advantage taken of superior information of the matter.
It is now contended, that the complainant had the .means of knowing the value of the property as well as the defendant: but the evidence on that point is not very clear ; and if the fact be admitted, it was when she was very young, and cannot be supposed to have been a very competent judge. Besides, many years had elapsed during which the advantage was altogether on the side of the defendant. And I am not by any means therefore satisfied, that the Court would not be authorized on that *390 ground alone to set aside the contract. But independent of the abstract principle that the trustee shall not be permitted to contract with the cestui que trust in rela-^on t|le ¿rust estate, it is most apparent that the defendant availed himself of the distressed situation of the complainant to force upon her a bargain utterly subversive of her just rights. There are many cases of hard an(l unconscionable contracts which do not amount to actual fraud, particularly of persons acting in a fiduciary character, which furnish ground for relief in a Court of Equity. It is unnecessary to go' into a full examination of the cases on that subject, as they have been lately fully examined and discussed in the case of Butler v. Haskell, 4 Desaus. Rep. 652(1). And although j Relieve the decision of that particular case did not give general satisfaction, yet I am of opinion that upon an impartial examination it will not be found so reprehensible as has been generally supposed. However that may be, it furnishes numerous cases which go to establish the general principle which I am endeavouring to point out. Lord Habdwicee, in the case of Lord Chester v. Jansen, 1 Atk. 339. 352, says, this Court will relieve agmnst presumptive fraud ; so that equity goes further than the rule of law, for there fraud must be proved, and presumed only. “To take advantage of another man’s necessities is as bad as to take advantage of his weakness.” Indeed the defendant does not deny, and the decree itself seems to admit, the general principle por which the complainants contend. And if any such cases exist, I can hardly conceive of one in which the parties would have stronger claims to relief than the case now under consideration. The complainant was entitled promptly to her legacy on her arrival at the age *391 of eighteen. The defendant was in possession of the funds out of which it was to be paid, and enjoying the profits of it; yet for four years, notwithstanding he knew her destitute situation, her entreaties were disregarded, until she was obliged to accept of what he was willing to give as the only resource for the means of subsistence. The principal grounds of defence are,
Many cases unconsciona-We contracts ing to actual íárijfwhere11" there is a relieved from m equity.
presump1iveSt fraud.
To take one’snecessities is as had vantage ofhis weakness.
A person may confirm a contract be-t0 ment> bllt ¡t must be after the party ¿nowkdge of the <*> and does it’ 2Nthai2ew to a connrmation, and after 0fthe original ^as ceased
1st. That the proposition came from complainant herself.
2d. That the defendant did not know that she was entitled to interest.
3d. That she afterwards confirmed the bargain.
It is true the proposition came from the complainant, but under circumstances which do not at all weaken her claim to relief. It was not until she despaired of obtaining justice from the defendant, that she yielded to - the necessity of making a proposition which at last promised to contribute something to her support; and that is now called a voluntary offer on her part, and urged as a concession on the part of the defendant to gratify her particular desire.
With regard to the interest, if the defendant did not know at that time that she was entitled he has learned it since, and knowing that it was not paid he knew that it was Still due. '
The last ground of defence is, that the complainant has since confirmed the contract. It is true a person may confirm a contract which was before liable to im- , , . . „ , peachment, but then it must be after the party has come to a knowledge of all the circumstances, and does it with a view to a confirmation, knowing that it might be peached, and after the pressure and influence of the original transaction has ceased. 1 Madd. Cha. 16. ° Scho. & Lefr. 474. But let us examine this confirmation on which the defendant relies. When reproached by the complainant with not having done her justice, as *392 if reproved by his own conscience, he promises to pay her one hundred dollars more. But it was never paid. And now a mere naked promise, such as he thought proper to make, but which it does not appear she ever agreed to accept, and which has never been performed, is set up as a bar to the just claims of the complainants. So far therefore from being a confirmation of the former contract, it was an admission on the part of the defendant that he had not done her justice. If the demand of the complainant had been of an uncertain or doubtful character, the Court might not perhaps have suffered the transaction to be unravelled. But it was a debt certain which the defendant was bound in law and honour to pay, and for the payment of which the funds had been placed in his hands. Every ground of defence on which the defendant relies furnishes evidence of the merits of the complainant’s claim, and of her right to relief. Every thing she did was under the pressure of a necessity which left her neither free to act nor to think. She was solitary, poor and friendless: and the defendant, who had voluntarily assumed the character of trustee, and from whom therefore she had aright to expect the most liberal justice, took advantage of her situation to impose upon her a bargain which he admits to be unjust. He admits it, when he offers to pay the additional sum of ‡ 100. He admits it, when he refuses to accept the offer of the husband to take the negro woman at her value if he will pay up the balance. He admits it, when he refuses to accept the complainant’s offer to keep the negro woman at the price of $500 in part payment, for it must certainly be a very high price. And he admits it, when he says he did not know that she was entitled to interest; because he thereby admits that the interest was not paid, and is therefore still due. But as this Court is always reluctant to interfere with contracts under whatever circumstances they may have been made, I shall not rest my opinion alone on the grounds which *393 have been considered. The complainant has still stronger claims on the aid of this Court. It appears from the will of the testatrix, and Mr Bee himself admits, that he had only a life estate in the property which he sold the complainant. It also further appears that upon certain contingencies, which need not necessarily be very remote, the same property will go over to the complainant herself. So that the defendant has not only paid the legacy in property which was not at his disposal, but to which the complainant may become entitled under the will. To this it is answered, that the executor has power under the will to dispose of the property, and that he is willing and has offered to confirm the contract. Without'entering into the question, how far an executor has the authority by virtue of his office as executor to dispose of the effects of the estate without permission of the Ordinary, it is sufficient in this case to observe that there are two executors, and one only has agreed to confirm(1). Besides, that one has executed his trust by delivering over the property to the residuary legatee, and therefore has no further control over it. With regard to the special power under the will to sell, it- is to sell any part of the stock of the testatrix, or any other property, which may be useless to her estate. Now that clause cannot be construed into a general power to sell any property which the executor might think .proper; for it embraces only such as is useless. It cannot mean her negroes; because they are directed to lay out the surplus funds of the estate in the purchase of negroes. If indeed this negro be of such a description as to be useless to the estate, then it comes within that provision *394 of the will. But then .it would make the defendant guilty of an actual fraud, which I am not willing to suppose. I will not presume that he intended to impose upon her property which he knew to be worthless. I think therefore the executor derives no such power from the will, and that the contract must be set aside. The decree of the Chancellor therefore must be reversed. But as the complainants have had the use of the slave, it is right that they should account for her services during that period.
A power in a will to sell such property of the testator as is useless to the estate will not authorize the executor to sell any property he may choose.
*394 It is therefore ordered and decreed, that the decree of the Chancellor be reversed, and the contract set aside. That the complainants do deliver up to the defendant, J. F. Bee, the negro woman in question, and that they do account to him for her services from the time she came into the possession of the complainant Mrs M’ Cants. And that the defendant do pay to the complainants the legacy, with interest thereon from the time it became due, deducting therefrom the amount which shall be found due for the services of the negro woman. And that it be referred to the master to adjust the accounts between the parties and report thereon to the next Court of Equity, and that the defendant do pay the costs.

Decree reversed.

 Vide Miles v. Ervin.

By the act of 1824 it is required that no sale should thereafter be made by executors and administrators but by order of the Court of Ordinary or the Court of Equity, and no sale made without such order to be valid in law or equity, except it be directed by the will.